**In re Randal G. THARP and Beverly Ann Tharp, Debtors.**

**Thomas M. WHEELER, Trustee, Plaintiff,**

**v.**

**Randal G. THARP and Beverly Ann Tharp, Defendants.**

**Bankruptcy No. 193–10081–7. Adversary No. 193–1015.**

United States Bankruptcy Court, N.D. Texas, Abilene Division.

Nov. 23, 1993.

James R. McMillon, Abilene, TX, for debtor.

Thomas M. Wheeler, Abilene, TX, Trustee.

## MEMORANDUM OF OPINION ON OBJECTION TO DISCHARGE

JOHN C. AKARD, Bankruptcy Judge.

Thomas M. Wheeler, Trustee-in-Bankruptcy (Trustee) filed an objection to the discharge of Randal G. Tharp and Beverly Ann Tharp (Debtors). The Trustee asserted that the Schedules and Statement of Financial Affairs filed by the Debtors were materially false and, therefore, their discharge should be denied under § 727(a)(4)(A) of the Bankruptcy Code.[1] The court finds that the discharge should be denied.[2]

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

2. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and

## APPLICABLE STATUTES, RULES, AND FORMS

Section 727(a)(4)(A) reads in pertinent part:

§ 727. Discharge.

(a) The court shall grant the debtor a discharge, unless—

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.;

Federal Rule of Bankruptcy Procedure 1007 provides in pertinent part:

Rule 1007. Lists, Schedules, and Statements; Time Limits

. . . .

(b) SCHEDULES AND STATEMENTS REQUIRED.

(1) Except in a chapter 9 municipality case, the debtor, unless the court orders otherwise, shall file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs, prepared as prescribed by the appropriate Official Forms.

Federal Rule of Bankruptcy Procedure 1008 provides:

Rule 1008. Verification of petitions and Accompanying Papers

All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.

Federal Rule of Bankruptcy Procedure 1007 provides:

Rule 9009. Forms

The Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. Forms may be combined and their contents rearranged to permit economies in their use. The Director of the Administrative Office of the United States Courts may issue additional forms for use under the Code. The forms shall be construed to be consistent with these rules and the Code.

The Introduction and General Instructions to the Official Forms provides that in connection with computer-generated forms: "Instructions provided on the printed forms can simply be built into the computer program; they need not be reprinted on the filed document." (Reprinted in Bankruptcy Rules; Norton Bankruptcy Law and Practice, Callaghan & Co. 1992–93, p. 689.)

## FACTS

### Procedural Background

On March 5, 1993, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code together with their Statement of Financial Affairs and Schedules. The United States Trustee appointed Mr. Wheeler as the Trustee in this case. The meeting of creditors pursuant to § 341 was held on April 7, 1993. Testimony at the hearing in this matter showed that at the commencement of the meeting of creditors, the Debtors' attorney asked the Debtors if they wished to make any changes in their Statement of Financial Affairs or Schedules. They, under oath, replied, "No." Subsequent questioning by creditors revealed substantial omissions from the Statement of Financial Affairs and Schedules.

On April 30, 1993, the Trustee filed his complaint objecting to the discharge of the Debtors in the captioned adversary proceeding. He pointed out numerous deficiencies in the Petition, Statement of Financial Affairs and Schedules. On June 4, 1993, the Debtors filed an answer admitting that there were numerous errors in the Schedules and Statement of Financial Affairs but pointing out that, concurrently with the answer, the Debtors were filing amendments to Schedules B, D, and the Statement of Financial Affairs.

The court heard the trial of the adversary proceeding on November 1, 1993. The Debtors requested that Mrs. Tharp be excused

Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(J).

from attendance because of illness. The Trustee did not object, so the trial proceeded without Mrs. Tharp's presence.

### The Documents Involved

The court notes that the original petition filed on March 5, 1993 appears to be on a computer-generated form. The heading for the names of the parties simply says "In re Randal G. Tharp" and "Name of Joint Debtor: Beverly Ann Tharp." Official Form 1 is the form for the voluntary petition. The instructions on that form read "IN RE: (Name of debtor—individual, enter Last, First, Middle)" and "Name of joint debtor (Spouse) (Last, First, Middle)." The form used by the Debtors had a space for adding "All Other Names." They left that space blank. Form 1 contains the following instructions:

ALL OTHER NAMES used by the debtor in the last 6 years (include married, maiden, and trade names).

ALL OTHER NAMES used by the joint debtor in the last 6 years (include married, maiden, and trade names).

The court heard no evidence as to how long the Debtors have been married. The testimony revealed that Mr. Tharp did most, if not all, of his business under the name of Gwynn Tharp. He also was in partnership with his father-in-law in a business known as Naylor's Used Cars. Apparently, that business was dissolved in late 1990 when Mr. Naylor filed for bankruptcy. Evidence revealed that Mr. Tharp had notes at the First National Bank of Baird secured by cars which were titled in the name of Naylor's Used Cars and that as late as 1991 he had floor-planned automobiles with the bank. Naylor's Used Cars was not mentioned anywhere in the petition. The Statement of Financial Affairs indicates that Mr. Tharp was self-employed during the years 1991, 1992 and 1993. Mr. Tharp testified that during that time he was self-employed as a commissioned salesman at Dave Ford Motors. Additionally, he acquired automobiles for sale for that company and for others. However, the petition contained no trade or business name.

In the portion of the petition entitled "Information Regarding Debtor," responding to a question entitled: "Nature of Debt," the Debtors put "Non–Business/Consumer." Under the heading "Type of Business," they responded "NA.." Under the heading "Briefly describe nature of business," they responded "N/A." The petition and schedules do not mention that Mr. Tharp is self-employed at Dave Ford Motors, nor do they describe his business of buying and selling motor vehicles.

Schedule B—Personal Property, in question 23, asks the Debtors to list all of their "automobiles, trucks, trailers, and other vehicles or accessories." They replied, "None." In the amendments filed on June 4, 1993, the Debtors acknowledged that they owned one 1983 Cadillac and one 1987 Ford pickup.

On Schedule D—Creditors Holding Secured Claims, the Debtors stated "None." In the amended schedules filed June 4, 1993, the Debtors acknowledged that they were obligated to Fleet Mortgage for $73,000.00 and to Haverty's (a furniture store) for $2,364.47. Testimony showed that the two vehicles omitted from their original schedules were subject to a lien held by the First National Bank of Baird. That lien was not mentioned either in the original or in the amended schedules.

The instructions for Official Form 6, Schedule B—Personal Property, state that if the property is being held for the debtor by someone else, that person's name and address must be given. The testimony revealed that one of the vehicles was in the possession of Mr. Tharp's brother, but that fact was neither revealed in the schedules, nor in the amended schedules. In response to Question 16a. of the Statement of Financial Affairs, the Debtor indicated that he was not in business.

### DEBTORS' RESPONSES

The Debtors asserted a number of defenses to the Trustee's complaint. First, they claimed that the Debtors had so many creditors (53) and that their activities were so entangled that it was difficult to prepare the schedules. They contended that no harm was done to any creditor by failing to list

that creditor as secured, because the creditor was listed either as an unsecured creditor, or was listed on the matrix. They also pointed to the fact that on June 3, 1993, they filed amended schedules. Mr. Tharp asserted that most of his friends knew him as Randal Gwynn Tharp.

## DISCUSSION

■ The Petition, Statement of Financial Affairs and Schedules when reviewed in their totality, clearly indicate that the Debtors tried to conceal their business, their true identities, and their assets. Mr. Tharp acknowledged that his business was done under the name of Gwynn Tharp, but the name Gwynn never appears in any of those documents. They listed no secured creditors, although they have at least three. Mr. Tharp acknowledged that automobiles were omitted from the schedules. Additionally, the fact that Mr. Tharp was actively engaged in business was cleverly concealed in these documents. The Debtors are responsible for furnishing all of the information required by the Official Forms. The fact that the forms they used were abbreviated and did not contain all of the questions contained in the Official Forms does not excuse their failure to furnish full and complete information as required by the Official Forms. Both Debtors signed the Petition, Statement of Financial Affairs and Schedules under penalty of perjury.

The Debtors were not forthcoming in providing information. At the meeting of creditors on April 7, 1993, they stated that the schedules were true and correct. When they were questioned by creditors the falsity of this statement became apparent. After the meeting of creditors the Debtors made no effort to correct the schedules. On April 30, 1993, the Trustee filed the complaint objecting to the discharge. The Debtors still took no action to correct the schedules until June 4, 1993. The amended schedules were not full, complete and accurate.

## CONCLUSION

Based on the evidence and testimony, the court cannot but conclude that the Debtors knowingly and fraudulently made false oaths in their Petition, Schedules, and Statement of Financial Affairs in this case. Accordingly, the court finds that their discharge must be denied under. § 727(a)(4)(A).[3]

3. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bank-ruptcy Rule 7052. This Memorandum will be published.